[Civ. No. 409.   First Appellate District.—March 26, 1908.]

# MELINDA A. DE WITT, Administratrix of Estate of BOONE W. DE WITT, Deceased, Respondent, v. FLORISTON PULP AND PAPER COMPANY, Appellant.

ACTION FOR DEATH OF EMPLOYEE—NEGLIGENCE OF EMPLOYER—EXPLOSION OF UNSAFE IRON ELBOW—SUPPORT OF VERDICT.—In an action for the death of an employee, caused by the negligence of the employer in maintaining a defective and unsafe iron elbow, taken from an old, rusty scrap pile, and forming part of a steam-pipe through which steam was conveyed from defendant's boiler at its mill to an engine operating the mill, by the explosion of which elbow, and the escape of steam therefrom, the employee was scalded to death,—*held*, that the evidence of the defendant's negligence was sufficient to support the verdict for the plaintiff.

ID.—PROVINCE OF JURY.—The jurors are the exclusive judges of the evidence and of the credibility of the witnesses, and they have the right to give credit to the testimony supporting their verdict, and to draw all reasonable inferences from it, and from the facts proved, and their verdict for the plaintiff supported by sufficient evidence and inferences of fact cannot be disturbed upon appeal.

ID.—INSTRUCTIONS TO BE CONSTRUED TOGETHER.—The instructions of the court must be read as a whole, and if, when so read, they are not contradictory, and if supplemented by each other they fairly state the whole law applicable to the case, the judgment will not be reversed merely because any one instruction does not state the whole law, with all of its modifications.

ID.—INSTRUCTIONS AS TO DUTY OF EMPLOYER—JURY NOT MISLED.—Instructions as to the duty of the employer complained of could not have misled the jury, by reason of not stating the whole law on that subject, where it appears that the court repeatedly elsewhere stated that the duty of the defendant was performed, if it exercised reasonable and ordinary care in the selection of the elbow which exploded.

ID.—UNTENABLE OBJECTION TO INSTRUCTIONS—IGNORING QUESTIONS INAPPLICABLE TO EVIDENCE.—An objection to the instructions given that they ignored the questions as to the knowledge of the deceased as to the defective elbow, and his assumption of risk of the danger thereof, was untenable where there was no evidence tending to show such knowledge of the deceased or his assumption of such risk.

ID.—ACTION BY MOTHER OF DECEASED—EVIDENCE BEARING UPON STATE OF HEALTH AND EXPECTANCY OF LIFE.—Where the action was by the mother of the deceased, as his administratrix, evidence that she had no illness since she was nine years old was admissible as bearing upon her state of health and her expectancy of life.

ID.—Evidence—Declaration of Deceased as to Going to Engine-room—Presumption—Object.—Evidence as to the declaration of the deceased as to his going to the engine-room a few minutes before the explosion occurred will be aided by the presumption that he was going there in and about the business of the defendant, where there is no evidence or contention to the contrary; and the fact that he stated his object in going could not have injured the defendant.

ID.—Re-examination of Witness—Discretion of Court.—The discretion of the court in allowing the re-examination of a witness after his cross-examination as to evidence as to which he had before testified in chief, to give a more full explanation as to his knowledge, will not be interfered with upon appeal, if no plain abuse of its discretion appears.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Snook & Church, and T. C. Coogan, for Appellant.

H. B. M. Miller, for Respondent.

COOPER, P. J.—This action was brought by the plaintiff as administratrix of the estate of her deceased son, Boone W. De Witt, to recover damages for his death, while in the employ of the defendant, such damages alleged to have been caused by its negligence.

The case was tried before the court with a jury, and a verdict was rendered in favor of the plaintiff, upon which judgment was duly entered.

Defendant made a motion for a new trial, which was denied.   This appeal is from the judgment and the order denying the defendant's said motion.

It is claimed that the evidence is insufficient to support the verdict, and that the evidence does not show that the defendant was guilty of such negligence as will entitle the plaintiff to recover.   This is the first and most important point in the case.

It appears without conflict that at the time of the injury the defendant, a corporation, was engaged in the manufacture

of pulp and paper in its pulp and paper mills at Floriston, in Nevada county, California, and that the deceased was, and for some weeks prior thereto had been, in its employ as a millwright. While so employed in the engine-room of the defendant about his usual business, doing the work required of him, and with no suggestion of negligence on his part, an iron elbow, forming part of a steam-pipe through which steam was conveyed from defendant's boiler at its mill to an engine in said engine-room, burst, and by the explosion blew out a partition between the said engine and said elbow, and by the escape of the steam so badly scalded and burned the deceased that he died of his injuries on the following day.

It is alleged that the injuries to deceased "were caused by and through the carelessness and negligence of the said defendant in this: that said elbow which exploded as hereinbefore stated was, by the said defendant, attached to the said steam-pipe of which it formed a part on the twenty-sixth day of December, 1903, and at the time of, and immediately prior to its being so attached, it was old, rusty, decayed, defective, unsafe and unfit for the purposes for which it was intended to be and was used by defendant; that of these facts the said defendant had full notice and knowledge."

After a careful examination of the evidence we are of the opinion that it sustains the verdict.

John H. Brightwell, a steam-fitter by trade, was working for said defendant in such capacity at the time deceased was injured. He testified in part as follows: "The elbow which exploded was put in by me between the twenty-fifth and twenty-eighth days of December, under the instructions of Mr. Woodford, the master mechanic, who had charge at the mill of putting in these elbows. There was no material about the shop to select from, and I got the elbow from the junk pile at the back of the shop. I told Woodford that I found the elbow out in the junk pile, and said to him that he should put off the matter of putting in this elbow, and get some new fittings, and that possibly he could get it from Reno; that the elbow was not safe to put in; and he said, 'Put it in,' he would take the chances of its blowing up, or something to that effect, and that they figured on starting it up on the 28th of December. This conversation occurred in. the pipe-shop on the 25th of December. On Woodford's instructions I put the elbow on the pipe that was connected with

the separator.  It was a 6-inch pipe to convey steam from the boiler-house to the engine.  It was something over two hundred feet from the boiler-house to the engine-room.  Steam was first passed through the pipe after the elbow was put on about 7 o'clock in the morning, possibly earlier; had been passing through up to the time of the explosion, which occurred about 4 o'clock in the afternoon.  I got that elbow in the junk pile between the machine-room and the pipe-room.  I saw Woodford after I found it, after 12 o'clock Christmas day, and said, 'Frank, I have been looking all over the place for an elbow, and have found only one.  I got it out here on the junk pile.  I don't think it is safe to put it on the steam line.'  I told him it had been lying out there and might be cracked from cold weather.  I hadn't seen any indications of it being cracked, but there was sulphite on it, and the threads were bad at one end.''

Woodford, the defendant's head machinist, testified in substance as follows: ''I had a talk with Brightwell in relation to putting in the separator.  The first I remember of saying anything to Mr. Brightwell in regard to that was that Mr. Shepard wanted to get it in its place; Brightwell said they were short of elbows.  This was in the pipe-shop.  He told me he didn't want to put anything on that had been used around the sulphite.  I said I guessed we could find some elbows.  I found one flange elbow in the warehouse and one screw elbow in the machine-shop which looked like a new one.  I called Mr. Brightwell's attention to the two elbows and the same day or the next day I met him between the machine-shop and the machine-room, and showed him lying along the passageway a screw elbow with a short piece of pipe screwed in each end.''

The witness Allen testified that he was present, and heard a conversation between Woodford and Brightwell, which he narrated as follows: ''Mr. Woodford walked around and examined the elbow.  He said, 'This elbow is all right; put it in, and I will go out in the machine-room and get another.' ''

The witness Campbell testified that he heard a conversation between Brightwell and Woodford, and that as he remembered the conversation it was as follows: ''Brightwell spoke to Woodford and told him that he was not able to find elbows that were safe to put on that steam line, and he also spoke about an elbow found on the scrap pile, and I

think he showed this elbow to Woodford, and Woodford told him it was all right, to put it in. Brightwell spoke about putting it off for a day and seeing if they could get an elbow from Reno. Woodford said he didn't think they could get them there.''

The witness McKay gives his version of the same or a similar conversation as follows: ''Woodford came in and Brightwell told him that he had hunted all over the place, and he could not find fittings that were good to put on this new work of piping up to the engine—the steam-pipe between the engine and boiler. Woodford asked if he had any fittings at all, and he said, 'Yes,' that he had one that he found on the scrap pile, and that he didn't like to put it on on that account, that he would rather send to Reno and get one. Woodford walked around and looked at it while it was lying on the bench, and said, 'Jack, that is all right. Go ahead and put it in. That engine must be started up Monday morning.' ''

In cross-examination Woodford was questioned as to these conversations, and answered as follows: ''Question: Mr. Brightwell and three or four witnesses all testified that that elbow which is there on the table, Plaintiff's Exhibit A in the case, was shown to you at the mill of the defendant at Floriston a little after 1 o'clock on December 25th, 1903, by Mr. Brightwell, and that Mr. Brightwell told you it was not safe to put on the steam line that was used to connect up the receiver. Now, are you willing to swear positively that no such statement was ever made to you by Mr. Brightwell at that time and place? (Answer:) I cannot recall it, no, sir. (Question:) But you won't swear positively that that did not occur? (Answer:) I won't swear positively that there was not a conversation. I recall some of it.''

From the above it may be conceded that the elbow was the part of the pipe that exploded, and that by this means the injury occurred. It exploded on the same day and a few hours after it was put in. The elbow was taken from an old scrap pile. If the testimony of the witnesses above named is true, Woodford was told about the unfitness and unsafeness of the elbow, and notwithstanding, he directed that it be put in so that the engine might be started up. The jurors were the exclusive judges of the evidence and of the credibility of the witnesses. They had the right to give credit to the testimony, to draw all reasonable inferences from it

and from the facts proven.   In this case it would violate
the settled practice of the courts of appeal for us to inter-
fere with the verdict.

Counsel claim that the court erred in its instruction to
the jury, and special stress is placed upon the giving of the
following instructions at the request of the plaintiff:

"First.   The Court instructs you that it is the duty of an
employer to furnish his employees with reasonably safe tools
and appliances for the doing of the work intended to be done
thereby; to furnish them with a reasonably safe and suit-
able place to work, and to keep such tools, implements and
appliances and such place of work in that condition, and for
his failure so to do resulting in injuries to his employees,
to which their own acts or omissions have not proximately
contributed, he is responsible in damages.

"Second.   If, therefore, you believe from all the evidence
in the case that the plaintiff's intestate, while in the em-
ployment of the defendant, was injured as alleged in the
complaint, and died as a result thereof, and such injuries
were caused by the failure of the defendant to furnish rea-
sonably safe and suitable tools, implements or appliances with
which to do the work intended to be done thereby, or from
its failure to furnish plaintiff's intestate with a reasonably
safe and suitable place in which to work, and that the acts
or omissions of said deceased did not proximately contribute
to such injuries, it will be your duty to render a verdict in
favor of the plaintiff and against the defendant."

It is claimed that the above instructions do not state the
law correctly, for the reason that they state the law to be
that it is the duty of the employer to furnish safe tools and
appliances, whereas the law only requires that he should use
reasonable and ordinary care in the selection of such tools
and appliances.

Instructions must be read as a whole, and when so read,
if they are not contradictory, and if, supplemented by each
other, they fairly state the law, a case will not be reversed
because any one instruction does not state all the rule with
its modifications.   Now, under the law it is the duty of the
employer to furnish his employees with reasonably safe tools
and appliances for the doing of the work intended to be done
thereby.   The law is so stated by all the authorities.   If it were
not so then we would have the converse—that it is not the

duty of the employer to furnish his employees with safe and suitable tools and appliances. The duty of the employer is performed, however, when he exercises reasonable and ordinary care, such as a reasonably prudent man would exercise, in the selection of tools and appliances for the uses and purposes for which they are intended. The instructions complained of do not give the last rule stated, or, in other words, they do not instruct the jury as to when or how the duty is performed; but elsewhere the jury are fully instructed as to such duty. We find that the court, in other parts of its instructions, plainly instructed the jury as follows: "If you believe from the evidence that the elbow in question was reasonably safe and proper to be used by the defendant you must render your verdict in favor of the defendant. The defendant is not responsible for the use even of an elbow which is shown to be defective, unsafe or unfit, unless the plaintiff has also proved that the defendant either knew, or had the means of knowing by the exercise of ordinary care, that the elbow was so defective, unsafe or unfit." And again: "The defendant is not required by law to furnish appliances which are absolutely safe, nor is the defendant required by law to resort to all possible tests or methods of examination. The defendant is required only in this behalf to exercise that reasonable amount of care, skill and prudence which reasonably careful men exercise in the transaction of their accustomed business." And again: "If the machinery be of an ordinary character and such as can with reasonable care be used without danger to the employee, it is all that can be required of the employer. This is the limit of his responsibility and the sum total of his duty."

It seems to us that the instructions complained of could not have misled the jury when the court, as we have shown, repeated time and again, that the duty of the defendant was performed if it exercised reasonable and ordinary care in the selection of the elbow. The jury evidently believed from the testimony that defendant did not use that degree of care which a reasonably prudent man would use in the selection of the elbow. It is no doubt the general rule that when the court instructs a jury upon what state of fact they may find a verdict the instructions should include all the facts in controversy upon which evidence has been offered material to the rights of the defendant or the plaintiff, as

the case may be; but this rule must be reasonably applied, in view of the whole record and all the instructions, for the purpose of determining as to whether or not the jury may, as reasonable men, have been misled by the instruction.

The views herein expressed are supported by the decision of our supreme court in *Stephenson* v. *Southern Pacific Co.*, 102 Cal. 143, [34 Pac. 618, 36 Pac. 407], which was decided by the court in bank after a petition for rehearing had been granted.    It is there said: ''The following instruction was given at the request of the plaintiff: 'If the jury believe from the evidence that the defendant was guilty of negligence as charged in the complaint' and that the plaintiff was injured thereby, your verdict should be for the plaintiff; and that, whether such negligence appears or is proved by the testimony on the part of the plaintiff or by defendant's own witnesses.'    This instruction entirely ignores the question of contributory negligence on the part of the plaintiff, and is therefore not in itself a complete and correct statement of the law; and the defendant insists that the judgment should be reversed for this reason.    In answer to this contention it is sufficient to say that the rule is well settled here that instructions are to be read and considered as a whole; and the fact that when taken separately some of them may fail to enunciate in precise terms and with legal accuracy propositions of law does not necessarily render them erroneous. It is sufficient if all the instructions taken together and not being inconsistent with each other or confusing, shall give to the jury a fair and just notion of the law upon the point. (*Davis* v. *Button*, 78 Cal. 247, [18 Pac. 133, 20 Pac. 545]; *People* v. *Lee Chuck*, 78 Cal. 339, [20 Pac. 719]; *Monaghan* v. *Pacific Rolling Mill Co.*, 81 Cal. 190, [22 Pac. 875]; *Murray* v. *White*, 82 Cal. 119, [23 Pac. 35]; *Doty* v. *O'Neil*, 95 Cal. 244, [30 Pac. 526]; *People* v. *Turcott*, 65 Cal. 126, [3 Pac. 461].)    Tested by this rule, we do not think the particular instruction complained of could possibly have misled the jury.''

In this case the instructions must be read as though, after stating, ''It will be your duty to find a verdict in favor of the plaintiff and against the defendant,'' the following words were added: ''but I instruct you that if the defendant used reasonable and ordinary care in furnishing tools and appliances it complied with the law, and must be deemed to

have furnished reasonably safe and suitable implements or appliances.''

There is no merit in the claim that the instructions withdrew from the jury the question as to plaintiff's knowledge of any defect in the elbow, or of his assumption of the risk. We find no evidence even tending to show that plaintiff knew of any defect in the elbow, or that he assumed the risk of the danger from such defective elbow.

Other instructions are complained of, but it is sufficient to say that we have examined them, and find no prejudicial error in the giving or refusing of any instruction. The instructions as a whole fully and fairly stated the law to the jury applicable to the case.

The plaintiff testified that she was past fifty-one years of age; that her health was good. She was then asked, under the defendant's objection if she had ever been sick in her life. She answered, ''Not since I was nine years old.'' It is now claimed that the court erred in permitting the question and the answer thereto. It seems to be conceded that the action being by a mother for the loss of her son, the evidence as to the health of plaintiff was material on the question as to her expectancy of life. We cannot say that the fact that plaintiff had not been ill since she was nine years old would not be a factor in determining her condition of health and her expectancy of life. There was no error in the ruling.

The witness Brightwell was permitted, under defendant's objection, to testify to a conversation he had with the deceased about five minutes before the accident; the testimony of the witness being given in answer to a question was as follows: ''He said, 'I have a letter from some parties that we have met before, and I will let you read it after a while. I am going down to the engine-room to look after the engine. I will put in a liner,' or something to that effect. 'I am afraid they are running hot on the boys.' '' Defendant moved to strike out from this answer all except the words, ''I am going down to the engine-room.'' The court in ruling said, ''That portion of the answer can stand that he was going down to the engine-room to look after some liner, or something to that effect. The rest will be stricken out.'' The objection is to that portion of the answer as to the fact that the witness was going ''to look after the engine.'' There

is no objection to the portion of the answer in which deceased said he was going to the engine-room. The fact that he stated his object in going could not have injured the defendant. It will be presumed that he was going there in and about the business of the defendant. There is no contention that deceased was at a place where he should not have been on an independent mission of his own at the time he was injured. The ruling was not erroneous.

The witness Brightwell was asked in redirect examination the following question: "Did you ever know of an instance in your career as a steam pipe-fitter where an elbow was taken off a scrap pile where it had been lying for a year, and you didn't know how it got there or who took it off; in any such case did you ever know of an elbow being put on a steam line of the kind?" To this question the defendant objected on the ground that it was incompetent, irrelevant and immaterial and not redirect examination; calling for the conclusion of the witness. The court overruled the objection, and the witness answered: "I have never known of any occurrence of that kind." It is now claimed that the question and the answer were immaterial, and that the court erred in not sustaining defendant's objection thereto. The witness had testified, in answer to questions by defendant in cross-examination, that there "are lots of such kind of elbows in use," and that "an old elbow which has stood the test is better than a new one"; and as to other matters in connection with getting the elbow from the scrap pile. The question was evidently asked for the purpose of showing the knowledge of the witness as to the use of old elbows, and of this particular one that was taken from the scrap pile. It was to some extent going over the matters to which the witness had already testified, but for the purpose evidently of obtaining a more full explanation of his knowledge as to the use of such old elbows. In such cases much is left to the discretion of the lower court as to allowing a question of this kind. It would have to be a plain abuse of such discretion in a case where improper testimony material to the issue was by this means brought out, that would justify us in interfering with the discretion of the trial court.

Many other rulings are excepted to and discussed in the briefs, but we have not deemed it necessary to consider them in detail. We have noticed those which we deem the most

plausible; and as we find no merit in them, we have not deemed it necessary to discuss the others.

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 25, 1908.