[S. F. No. 5209. In Bank.—September 7, 1911.]

PETER A. KEARNEY, Appellant, v. TERESA BELL, Respondent.

ACCOUNT STATED—ASSENT PROCURED BY FRAUD.—An account stated is a contract, and like any other contract may be avoided by showing that the assent of one party thereto was procured by the fraud of the one seeking to enforce the contract. Such a defense is a legal and complete defense.

ID.—JURY TRIAL OF ISSUE OF FRAUD.—An action upon an account stated is an action at law, and the defense that the defendant's assent to it was procured by fraud may be submitted to the determination of a jury, under the instructions of the court.

ID.—SUFFICIENCY OF ACCOUNT STATED.—An instrument in writing, signed by the debtor, acknowledging the justice and legality of a bill for medical services in the amount for which it was presented, constitutes an account stated.

ID.—CONSTRUCTION OF INSTRUCTIONS—INSUFFICIENCY IN PARTICULAR INSTRUCTION.—Instructions must be read together as a whole, and when so read, if they are not contradictory, and if, supplemented by each other, they fairly state the law, a case will not be reversed because one particular instruction does not state all the rule with its modifications.

ID.—EVIDENCE—SURCHARGING ITEMS OF ACCOUNT STATED—ASSENT—FRAUD.—In an action on an account stated, the general rule is that the correctness of the various items of the account cannot be attacked. This rule has no application where the defendant has raised an issue regarding his assent to the alleged account stated, and the items have a logical bearing on this issue. Nor does it apply where the account stated is attacked for fraud or mistake tainting the entire transaction. In such cases the real issue is whether the parties ever gave a binding assent to the account. Any competent evidence which is relevant to that issue may be introduced.

ID.—FALSITY OF ITEMS.—In such an action, where the defense is that assent to the account stated was obtained by fraud, proof of the falsity of the items, if such proof tends to support the charge of fraud, may be made.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Edmund Tauszky, for Appellant.

T. Z. Blakeman, for Respondent.

SLOSS, J.—This is an appeal by plaintiff from an order denying his motion for a new trial. The appeal was originally heard and determined in the district court of appeal for the first appellate district. That court, after first reversing the order appealed from, granted a rehearing, and thereafter entered a judgment of affirmance, stating the grounds for its later action in an opinion, a copy of which is as follows:

"In this case a rehearing was granted, and upon further consideration we adopt that portion of the opinion reading as follows:—

"This is an appeal from an order denying plaintiff's motion for a new trial.

"The second amended complaint, upon which the action was tried, contains two counts, each upon an account stated for

$25,500, of which $21,780 remained unpaid. In the first count it is charged that the account was stated on the 25th day of August, 1898, and in the second on the 23rd day of January, 1899.

"In her answer defendant denied the material allegations of each of said counts, and also as a separate defense pleaded in substance that she had been induced to execute the instrument relied on as the account stated of August 25th, 1898, by false and fraudulent representations made to her by plaintiff.

"The action came on for trial before a jury, and at the beginning thereof plaintiff moved the court to first try and dispose of the issues presented by what he termed the equitable defense of fraud. The motion was denied.

"After the close of plaintiff's evidence, defendant filed an amendment, in which she set up in substance that she had been induced to execute the writing of January 23, 1899, relied on as an account stated on that day, by false and fraudulent representations made to her by plaintiff.

"Whereupon plaintiff renewed his said motion, and the same was again denied, and the whole case was finally submitted to the jury for a general verdict and answers to special issues directed to the defense of fraud.

"Plaintiff urges that the court erred in said rulings. With. this contention we cannot agree.

"An account stated is a contract, and like any other contract may be avoided by showing that the assent of one party thereto was procured by the fraud of the one seeking to enforce the contract. Such a defense is a legal and complete defense. 'Both courts of law and equity in proper cases have jurisdiction in cases of fraud, and when the acts constituting the fraud and the relief sought are such as are cognizable in a court of law, the parties are entitled to a jury trial . . . ' (*Fish* v. *Benson,* 71 Cal. 428, [12 Pac. 454].)

"The action upon an account stated is an action at law, and we know of no reason why the defense that the defendant's assent to the account stated was procured by fraud may not be passed upon by the jury, under the instructions of the court. This is what was done in this case, and there was no error in so doing.

"Defendant sought no affirmative relief. The fraud was pleaded simply as a defense to an action for a money judgment only.

"Defendant was and is the widow of Thomas Bell, deceased, and had been given a family allowance for the support of herself and the minor children of herself and decedent, by order of the court in which was pending the administration of the estate of said deceased. Plaintiff, as a physician, had rendered services to defendant and her children, covering a period from October, 1892, to some time in 1898. On August 25th, 1898, plaintiff rendered to defendant a bill for his services as follows:

" 'SAN FRANCISCO, Cal., Aug. 25, 1898.
" 'MRS. TERESA BELL (Guardian)
" 'To PETER A. KEARNEY, M. D.          Dr.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" 'For professional services rendered Marie T. Bell, Robina Bell, Muriel Bell, Reginald Bell, Eustace Bell from October 17, 1892, to May 21, 1898, and Thomas F. Bell, from October 17, 1892, to May 10, 1896—$25,500, twenty-five thousand five hundred dollars.'

"Defendant endorsed on the back thereof the following:

" 'Messrs. Maxwell & Staacke, executors of the Bell estate. Pay this account and charge the same to the family allowance.'

" 'TERESA BELL.'

and returned the same to plaintiff.

"This paper was marked 'Plaintiff's Exhibit 1.'

"The bill not having been paid, on the 23rd day of January, 1899, plaintiff presented to defendant another writing, and at his request she signed it and returned it to him. This writing is as follows:—

" 'On the 25th day of August, 1898, I gave Dr. Peter A. Kearney an order for the payment of $25,500 on the executors of the estate of Thomas Bell, deceased, due him for services rendered as physician to me and my children at my request, and said executors having refused to pay or honor said order, I hereby acknowledge said indebtedness as just and legal this 23rd day of January, 1899.

" 'TERESA BELL.'

"This paper was marked 'Plaintiff's Exhibit 2.'

"There can be no doubt but that this second paper, read in connection with the first paper, constituted an account stated, and, as the execution thereof was admitted by defendant, entitled plaintiff to a verdict unless the evidence showed

that the execution thereof by defendant was procured by the fraud of plaintiff. In this connection the court instructed the jury as follows. 'The paper marked "Plaintiff's Exhibit 2," taken in connection with the paper marked "Plaintiff's Exhibit 1," constitute an account stated between plaintiff and defendant, unless you find that defendant's signature to said paper was procured by plaintiff through or by means of misrepresentation or artifice on plaintiff's part. The presumption of law. is that a person's signature to an instrument was made freely and voluntarily and was obtained without fraud, misrepresentation or artifice, and the burden of proving the contrary is on the party alleging it.'

"But at the request of the defendant the court also charged the jury as follows: 'The court instructs the jury that if they believe from the evidence that the defendant, when she signed and delivered to plaintiff the writing dated January 23rd, 1899, believed and intended the same to be only a further acknowledgment of plaintiff's right to collect from the family allowance, granted in the Estate of Thomas Bell, deceased, the sum of $25,500, not binding her individually to pay plaintiff said sum of $25,500, they will find for the defendant,'— to which plaintiff excepted.

"It is claimed that this instruction is erroneous for the reason that the jury were not told that defendant's belief must be the result of misrepresentation on plaintiff's part, or that they must believe that defendant's signature was obtained by means of false statements relied on by defendant.

"It was upon this theory that the instruction was held to be erroneous and the judgment reversed in the former opinion; but upon rehearing and a further consideration of the instruction and of all the record, we have concluded that the jury were told over and over again in other instructions that the belief must have been the result of false and fraudulent representations by plaintiff. Instructions must be read together as a whole; and when so read, if they are not contradictory, and if, supplemented by each other, they fairly state the law, a case will not be reversed because one particular instruction does not state all the rule with its modifications. The court of its own motion instructed the jury as follows: 'If you find therefore that plaintiff was not guilty of any fraud or misrepresentation or artifice in procuring defend-

ant's signature to the papers marked respectively "Plaintiff's Exhibit 1" and "Plaintiff's Exhibit 2," your verdict must be for the plaintiff for the balance remaining unpaid on said account.' And at the request of the defendant as follows: 'If you find from the evidence in this case that the writings or instruments of August 25th, 1898, and January 23rd, 1899, were signed by defendant freely and voluntarily, without any misrepresentation or fraud or undue influence or artifice made by or practiced upon the defendant by plaintiff, then the plaintiff will be entitled to recover.' And again, the court instructed the jury as follows: 'The paper marked "Plaintiff's Exhibit 2" taken in connection with the paper marked "Plaintiff's Exhibit 1," constitute an account stated between plaintiff and defendant unless you find that defendant's signature to said paper was procured by plaintiff through or by means of misrepresentation or artifice on plaintiff's part.' And in the concluding part of the court's charge to the jury the court again said: 'Therefore, to crystallize this whole matter I will say to you, if you find that the defendant in this case freely, voluntarily and without any fraudulent practices or artifice or deception practiced on the part of plaintiff, executed and signed these papers, they constitute an account stated, and plaintiff would be entitled to a verdict for the amount of that account, less the payments made thereon. . . . But if, on the other hand, you find that the signature of the defendant to the papers was procured by fraud, misrepresentation, artifice of any kind, then it will be your duty to render a verdict in favor of defendant.'

"It is further shown by the special issues submitted to the jury and the answers of the jury thereto that they were not misled by the instruction complained of, and that they not only understood the instructions as given, but found that the defendant's belief was the result of misrepresentation on the part of plaintiff. Among the special issues submitted to the jury at plaintiff's request and their answers were the following:—

" '3. Did defendant know the entire contents of the bill of August 25th, 1898, before endorsing thereon that request to the executors?' The jury answered 'No.'

" 'Did the plaintiff, when he asked the defendant to sign the paper of January 23, 1899, represent to her that said bill was

merely a further written acknowledgment of his right to collect $25,500 from the family allowance?'   The jury answered 'Yes.'

" '6. Did the plaintiff, when he asked the defendant to sign the paper of January 23, 1899, state to her that if she would sign that paper he would have his attorney get the executors to pay the balance due her upon family allowance?'   The jury answered 'Yes.'

"And at defendant's request the following special issues were submitted to the jury and answered as follows:

" '5. Did the plaintiff obtain from the defendant the order endorsed and signed by her upon the account dated August 25, 1898, by means of any misrepresentations as to the quantity or value of his services?'   The jury answered 'Yes.'

" '6. Did the plaintiff obtain from the defendant the writing signed by her and dated January 23rd, 1899, by means of any misrepresentation or untrue statement?'   The jury answered 'Yes.'

"The case was tried under our system with the aid of a jury, and the special function of the jury was to pass upon the facts; and as the jury found, in answer to special issues and in several different forms, that the writing was procured from the defendant by means of false representations, it could not have based its verdict upon a finding as to the mere belief of the defendant as to the legal effect of the paper.  No one could read the record, the instructions of the court, and the special findings of the jury, and believe that the instruction claimed to be . erroneous had any influence upon the verdict of the jury.  The jury based its verdict upon the findings as to the belief founded upon and induced by misrepresentations, and under the special instruction of the court given at plaintiff's request, to wit: 'If you find therefore that plaintiff was not guilty of any fraud or misrepresentation or artifice in procuring defendant's signature to the papers marked respectively "Plaintiff's Exhibit 1" and "Plaintiff's Exhibit 2," your verdict must be for the plaintiff for the balance remaining unpaid upon said account.'

"The conclusion we have reached is supported by many well-considered cases.  The case of *De Witt* v. *Floriston Pulp & Paper Co.*, 7 Cal. App. 774, [96 Pac. 397], decided by this court is directly in point.  There, in an action for damages on account of personal injuries, the court at the request of the

plaintiff instructed the jury that if the injuries received by the plaintiff 'were caused by the failure of the defendant to furnish reasonably safe and suitable tools' the plaintiff would be entitled to recover. It was claimed, and correctly claimed, that the instruction did not state the law correctly for the reason that the law only requires the employer to 'use reasonable and ordinary care in the selection of such tools and appliances.' It was there said: 'Instructions must be read as a whole, and when so read, if they are not contradictory, and if, supplemented by each other, they fairly state the law a case will not be reversed because any one instruction does not state all the rule with its modifications. Now under the rule it is the duty of the employer to furnish his employees with reasonably safe tools and appliances for the doing of the work intended to be done thereby. The law is so stated by all the authorities. If it were not so then we would have the converse —that it is not the duty of the employer to furnish his employees with safe and suitable tools and appliances. The duty of the employer is performed however when he exercises reasonable and ordinary care such as a reasonably prudent man would exercise in the selection of tools and appliances for the uses and purposes for which they are intended. The instructions complained of do not give the last rule stated, or, in other words, they do not instruct the jury as to when or how the duty is performed; but elsewhere the jury are fully instructed as to such duty.' The opinion then, after showing that the other instructions fully covered the matter omitted from the instruction under consideration, concludes: 'It seems to us that the instructions complained of could not have misled the jury when the court, as we have shown, repeated time and again that the duty of the defendant was performed if it exercised reasonable and ordinary care in the selection of the elbow. The jury evidently believed from the testimony that defendant did not use that degree of care which a reasonably prudent man would use in the selection of the elbow. It is no doubt the general rule that when the court instructs the jury upon what state of facts they may find a verdict the instructions should include all the facts in controversy upon which evidence has been offered material to the rights of the defendant or the plaintiff, as the case may be; but this rule must be reasonably applied in view of the whole record and

all the instructions, for the purpose of determining as to whether or not the jury may, as reasonable men, have been misled by the instruction.'

"In the case last cited the supreme court denied a petition for rehearing.

"We need only refer to the authorities collated and cited in that case to justify the conclusion we have reached in this and we will cite no further authorities upon the proposition.

"It would have been better for the court to have excluded evidence as to defendant's financial condition at the time she signed the statement; but as the plaintiff was her family physician and was acquainted with her financial condition as shown by the evidence, it was closely connected with the negotiations leading up to the signing of the papers. We do not believe it to be of sufficient importance to justify a reversal of the case, or that its exclusion would have in any way affected the verdict of the jury.

"As to the evidence, we have carefully examined it, and we find that there is sufficient evidence to support the verdict of the jury and their special findings on the issues submitted to them.

"The order is affirmed."

Subsequently this court made its order transferring the cause here for hearing.

After careful consideration of the arguments advanced by the respective parties, we have reached the conclusion that the district court of appeal was right in affirming the order denying a new trial. With respect to the matters discussed by that court, we are entirely satisfied with its opinion above quoted.

The court of appeal did not, however, notice all of the contentions advanced by appellant, and some additional points made by him should, we think, be given attention.

1. It is earnestly contended that the court erred in compelling the plaintiff to produce his books of account, and in permitting the defendant to inquire into the various items of the account. It is, no doubt, the general rule that the correctness of the various items of an account stated cannot be attacked. (*Hendy* v. *March,* 75 Cal. 566, [17 Pac. 702].) "An action upon an account stated is not founded upon the original items, but upon the balance ascertained by the mutual

consent of the parties." (*Carey* v. *Petroleum Co.*, 33 Cal. 697.) But this rule has no application where the defendant has raised an issue regarding his assent to the alleged account stated, and the items have a logical bearing on this issue. (*Coffee* v. *Williams*, 103 Cal. 550, [37 Pac. 504].) Nor does it apply where the account stated is, as it is here, attacked for fraud or mistake tainting the entire transaction. (1 Am. & Eng. Ency. of Law, 2d ed., p. 463.) In such cases the real issue is whether the parties ever gave a binding assent to the account. Any competent evidence which is relevant to that issue may be introduced. (See *Oil Co.* v. *Van Etten*, 107 U. S. 325, [1 Sup. Ct. 178, 27 L. Ed. 319].) In *Coffee* v. *Williams*, 103 Cal. 550, [37 Pac. 504], it was held that where the defendant's assent to the account had been denied, it was proper to go into the various items, as the falsity of the items had a tendency to show that the defendant had never agreed to the alleged account. On similar reasoning, where it is averred that assent to the account has been obtained by fraud, proof of the falsity of the items, if such proof tends to support the charge of fraud, may be made. In the case at bar, the testimony offered by the defendant in contradiction of the items appearing on plaintiff's books, and the entries themselves, were relevant to the issue of fraud raised by the answer. There was, therefore, no error in the admission of this evidence.

2. The witness Manning was permitted to refresh his recollection from a memorandum made six or seven years after the event regarding which he testified. There was no showing sufficient, under section 2047 of the Code of Civil Procedure, to authorize the use of the memorandum for this purpose. But all that Manning testified to was that he had gone to the defendant's ranch on January 16, 1896 (one of the dates on which plaintiff claimed to have rendered services to the defendant at the ranch) and that he had not seen plaintiff there. The plaintiff and another witness testified that plaintiff had left the ranch on January 16th by the morning train, presumably before Manning's arrival. In view of these facts, the testimony of Manning had a very slight, if any, tendency to contradict the plaintiff, and its admission was not substantially prejudicial.

3. The appellant complains that two of the special issues submitted at the request of the defendant presented to the

jury questions of law, rather than of fact. We are unable to see that the plaintiff was harmed by the course followed, if it was improper. Furthermore, no exception was taken, and the action of the court in directing a jury to answer special issues was not, at the time this action was tried, one of the matters deemed excepted to under the provisions of section 647 of the Code of Civil Procedure.

For these reasons, in addition to those stated by the district court of appeal, we think the motion for new trial was properly denied.

The order is affirmed.

Shaw, J., Angellotti, J., Lorigan, J., Melvin, J., and Henshaw, J. concurred.