[Civ. No. 22298.   Second Dist., Div. Two.   Sept. 13, 1957.]

G. B. LENNOX, Respondent, v. ISADORE BROWN,
Appellant.

Wilson, Carter, Flourney & Matthews for Appellant.

Antablin & Coyle, Littlejohn & Callister and E. Talbot Callister for Respondent.

ASHBURN, J.—After a nonjury trial the court awarded plaintiff a judgment against defendant Isadore Brown (a woman) for a principal sum of $17,000 upon the theory of account stated.   Defendant appeals from the judgment and an order denying her motion for new trial.

Defendant was employed by plaintiff as general manager of the Riccardo Apartments which he had purchased, situated in the city of Los Angeles. Plaintiff lived in Nebraska and defendant in Los Angeles. The complaint was in two counts, one for conversion of moneys entrusted to defendant, and the other upon an account stated. The latter is supported by a document (Exhibit 1) signed by defendant and delivered to plaintiff on or about its date, reading as follows: "2-17-53 This is to certify that Dr. Lennox left with me $17,000 to put in a safety deposit box, to pay on property to be bought, and I used it, but I will replace it. Signed Isadore Brown."

The first cause of action alleged delivery to defendant of $5,000 on or about September 15, 1949, with instructions to place it in a safe deposit box and keep the same until plaintiff should authorize its use in the purchase of realty for him; also, that $12,000 was delivered to defendant on or about January 12, 1951, to be kept in the same safety box until authorization should be given by plaintiff to use it in the purchase of realty for plaintiff or maintenance of property owned by him and managed by defendant. Plaintiff testified that he delivered $5,000 to defendant in September, 1949, and another $12,000 about January, 1951, with instructions as alleged in the complaint; that said sums were in currency and he took no receipt from defendant. Having given no authority for use of the money for any of the specified purposes or otherwise, plaintiff early in 1953 learned or suspected that there was no money in the box. Defendant claimed that part of it was there and at plaintiff's insistence they went to the box and verified the fact that there was no money in it. He asked her if she had any of it at her apartment and she said "No, but I will pay it back." "Why did you take it?" "Because it looked so good to me." "[S]he sat down on the floor and was crying." According to defendant, plaintiff then began asking constantly for return of his money.

In February, 1953, the parties met at the home of plaintiff's sister in Marshall, Texas. Defendant then disclosed that she had drawn $275 from the Riccardo bank account to pay for her trip but said she would pay it back. Plaintiff then prepared Exhibit 1 in defendant's presence and presented it to her for signature. She did not want to sign it but did so. Less than three months later she telephoned plaintiff in Omaha saying she had decided she would not pay, that she had a reason and he would find out later. None of the money

had been used for plaintiff's benefit and he had given no authority for its expenditure. The foregoing, except as otherwise stated, rests upon plaintiff's testimony.

Defendant, as a witness, admitted the receipt in 1949 of $5,000 from plaintiff, saying it was in the form of checks which she cashed and that she then placed the proceeds in her safety box as plaintiff had asked her to do. She also said that she received later sums in cash, making a total of $10,000 delivered to her by plaintiff, not $17,000; also that no receipt was given for any moneys so delivered to her.

The crux of the defense was that defendant worked for plaintiff from 1946 to 1953 without compensation, due to the existence of extramarital relations between the two of them. She said that plaintiff told her the purchase of the Riccardo Apartment building was "to take care of us"; that he was very unhappy with his wife and had purchased the property in his father's name in order to keep it secret from his wife. Defendant also testified that she was about to move into a large apartment at Third Street and Mansfield Avenue in the fall of 1950, that they talked about plaintiff moving in also, and in response to her statement that she would need money to furnish the apartment he said, "You have money. Go on and use it." This was shortly after plaintiff had delivered $7,500 to her in September. "He said it was all right, because all of the pleasure that he got was in coming out here, relaxing and staying with me, and we did, we enjoyed it very much. The place was furnished for his comfort as well as mine." Defendant expended $10,000 to $12,000 in furnishing that apartment and hence, according to her version, owed plaintiff nothing.

When Exhibit 1 was signed in Texas defendant was there at telegraphic request of plaintiff; they were still on good terms. When Exhibit 1 was presented for signature, "The conversation was that his wife was raising Cain about my having the property, handling the property, and about our relationships, and that he had to have something to show her that what we were doing was on a purely business basis. . . . He said it would never get out of his hands, because I hesitated before I signed it, and, of course, that amount was not $17,000 there. At least it shouldn't have been." When she asked why he had placed $17,000 in the writing, "He said, well, it didn't make any difference because there was nothing about when I was going to pay it back or how I was going to pay it back, and that it couldn't be anything wrong, anything

to go against me; that he would protect me in it. Q. Did he say what he would do with the paper after he showed it to his wife? A. He said he would tear it up." The words, "to pay on property to be bought" were not in the instrument when defendant signed it. Such was defendant's version, but the court rejected it, found that an account was stated in the sum of $17,000 and rendered judgment accordingly.

■ We must accept upon appeal the evidence and inferences most favorable to respondent. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) Apparently recognizing this rule, appellant's counsel make no claim of insufficiency of the evidence to support the finding of account stated, contenting themselves with claims of error in the trial. Those claims are somewhat attenuated.

■ First it is argued that plaintiff's attorney interfered with the cross-examination of plaintiff in such a way as to confuse both court and examining counsel, with the result that evidence outside the issues was received. The record indicates that there were three items of $5,000 passing from plaintiff in 1949 or 1950 or both. Defendant testified that $5,000 was delivered to her in 1949, another $5,000 in 1950, and both parties agreed that there was an exchange of $5,000 checks between plaintiff and Mrs. Charity White, a mutual friend. In cross-examination of plaintiff defense counsel apparently was trying to show that there was no delivery of $5,000 to defendant in 1949, and that that was the date of the Charity White exchange of checks. Plaintiff became somewhat confused as to whether the first $5,000 was delivered to defendant in 1949 or 1950. His counsel interjected a statement that "he said 1950. He just testified to that." This led to a colloquy in which both counsel and the court participated. Finally, the judge inquired, "Who asked the question that you objected to?" and the defense attorney said, "I asked the question." Later he said that he was a little confused and claimed that any testimony as to a 1950 transaction with defendant was outside the issues because the complaint alleged it to have occurred in 1949. Obviously there is no merit in this, for defense counsel had injected the 1950 date through cross-examination of plaintiff and could not thereafter preclude opposing counsel from rehabilitating the witness. Not only was the 1950 line of inquiry within the issues, but it is also true that the record does not support the claim that the judge was confused. ■ Moreover, an account having been

stated in 1953, it was immaterial whether the particular item occurred in 1949 or 1950.

It is also argued that defendant had interposed the defense of fraud to the claim of account stated and therefore had the right to challenge particular items, citing *Kearney* v. *Bell,* 160 Cal. 661 [117 P. 925] and *Auzerias* v. *Naglee,* 74 Cal. 60 [15 P. 371]. Actually this was done to such extent as defense counsel desired and there is no sound basis for a claim of error in this respect.

It is further contended in the same connection that proof of an account stated should have been limited to the dates alleged in the conversion count and hence the 1950 transaction with defendant was outside the issues. This is but a repetition of the contention which runs throughout the brief. As above stated, the 1950 inquiries were not outside the issues.

There is no merit in this appeal.

The attempted appeal from the order denying new trial is dismissed. (3 Cal.Jur.2d, § 62, p. 500.)

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.