[Crim. No. 2195. Second Appellate District, Division One.—October 11, 1932.]

THE PEOPLE, Respondent, v. FRED W. STANDLEY, Appellant.

James V. Brewer for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

TAPPAAN, J., *pro tem.*—The information upon which appellant was tried contained ten counts. The trial was had before the court sitting without a jury, and appellant was found not guilty upon nine counts and guilty upon one count—count VII. From the judgment entered against him upon count VII, and from the order denying his motion for a new trial, appellant takes this appeal.

The count of the information upon which appellant was found guilty charged that appellant "did wilfully, unlawfully, feloniously and knowingly procure and offer to be filed, registered and recorded, a false and forged instrument, to-wit: a certain purported deed which by its terms purported to convey from E. L. Stevenson, grantor, to S. Judson Manning, grantee, certain real property, to-wit: Lot 83, Tract 8921, which said deed was recorded on February 27, 1930, in Book 9732, page 290, official records of Los Angeles county, said purported deed being an instrument which, if genuine, might be filed, registered or recorded under the laws of the state of California".

The crime thus charged is the felony defined by section 115 of the Penal Code, this section being one of the sections contained in chapter IV of the Penal Code, entitled "Forging, stealing, mutilating, and falsifying judicial and public records and documents." The trial, which culminated in appellant's conviction, occupied the trial court for many days, and the record presented upon this appeal contains well over two thousand pages of transcript. There is contained in the record much that is not germane to this inquiry, but it was necessary for this court to examine the entire record, as presented, by reason of the fact that the testimony of a majority of the witnesses, while presented primarily as to a particular count, also was of a general nature, and applied to all of the counts involved in the

information. In summarizing the evidence, no attempt will be made here to quote the actual language employed by the several witnesses. Where it is deemed necessary to make direct quotations, they will be indicated in the usual manner.

It appears from the record that the appellant, who is described by his counsel as a lawyer who had never been disbarred, had been for many years engaged in that particular branch of the real estate business known as a "Trader". It would also appear that a "Trader", as used here, is one engaged in dealing in and with so-called "equities" and trust deeds. Appellant maintained offices in a number of buildings in the city of Los Angeles, and in 1922 or 1923 moved into certain offices in the Western Mutual Life Building. Appellant was an occupant of these same offices up to the time of his arrest. It is appellant's contention that, at all times while he was an occupant of these offices, he was associated therein with E. L. Stevenson, S. Judson Manning and Elmer C. Manning. The evidence discloses that business was transacted in these offices under a number of different names and styles. From the names that appeared upon the door of the offices and from the names upon the office stationery made use of by the typists employed there, it appears that beside appellant's name, the names of Manning Bros., Stevenson Realty Co., California State Realty Association and S. Judson Manning, were made use of in the transaction of the business carried on there. Appellant testified that he was employed by some of the above-named associations as office manager. The suite of offices consisted of three connected offices, one of which was used as a reception-room and in which there was an office safe. In this reception-room the typist received telephone calls and "buzzed" the other offices. As to the method of conducting the reception-room, the testimony of the two typists, who were in charge thereof for a period of about five years just prior to appellant's arrest, is of interest. These witnesses, one of whom was employed at the time of appellant's arrest, and the other about a year previous, and for a period of some three or four years, were both hostile to the prosecution by whom they were called. In fact, one of them only appeared after an extended search had been made for her, and after a

bench warrant had been issued requiring her attendance in court. Their testimony, in so far as it is material here, was very similar as to facts and circumstances. They both occupied, during the period of their employment, the reception-room and operated the telephone. The doors from the reception-room which connected it with the other offices in the suite were at all times kept locked. That appellant had access to all of the offices and the safe in the reception-room, dictated letters which were by them written upon stationery having printed thereon the names hereinbefore enumerated as occupants of the offices. That this stationery was given them by appellant and the letters when written were delivered to him. That during the time of their respective employment in the offices, they had never seen any person of the name of either E. L. Stevenson or S. Judson Manning; that during said time, no one was identified to either of them as E. L. Stevenson or S. Judson Manning. That letters were received at the office addressed in these names and were left in a place accessible to appellant. It appeared from the testimony of other witnesses that, when persons called and asked to see the persons just named, the interview was had with a person identified by the witness as the appellant. A witness testified that a person representing himself as E. L. Stevenson rented from her a house and gave a check signed E. L. Stevenson. This witness identified appellant as that person. A radio salesman identified appellant as Lane Stevenson, who purchased a radio delivered to this same house. The rent check and radio contract were in evidence in the case and were made use of by the experts examined. A witness testified that he and one Louis Wade Stevenson had had desk room in the offices occupied, at different times, by appellant, and that this Stevenson had had difficulty with appellant over his (Stevenson's) name at one time. This Stevenson died in 1927, some years before the events here involved took place. Evidence was introduced that E. L. Stevenson had been a party defendant in some twelve suits filed in the superior court and had been served personally in but one of these actions. It is a somewhat significant fact in this connection that Stevenson was served with process by S. Judson Manning, and that the notary before whom the affidavit was acknowledged was appellant.

Appellant testified that Stevenson and Manning made use of the office at night, and in support of this contention, offered the testimony of a witness, Miss MacLean, who stated that she was at the office at night on a number of occasions and saw E. L. Stevenson there. The relationship of this witness to appellant is not fixed with certainty by the record. One witness described her as an ''auditor''. Some of her jewelry was found in the office safe. A divorced wife of appellant also testified that, over a long period of time and up to within a few months of the trial, she was in the office of appellant and wrote letters for him in the evenings, but that she had never at any time seen E. L. Stevenson there or elsewhere. A number of witnesses besides Miss MacLean and appellant testified to the existence of E. L. Stevenson in the flesh. In most instances they were introduced by appellant although in some few cases they claimed to have met him years before trial and to have had business dealings with him. It is to be noted that these witnesses, when requested to describe his personal appearance, gave a rather colorless and noncommittal description. One of appellant's witnesses was an exception to this, and described Stevenson as having a face ''if seen once would never be forgotten; his eyes were slant; oriental; a Japanese face''. In view of this somewhat startling divergence in the opinion of the witnesses as to the personal appearance of E. L. Stevenson, and that fact, taken in conjunction with the fact that in most of the instances ''Stevenson'' was introduced by appellant to the witnesses, might lead to the conclusion that more than one person may have co-operated with appellant as ''E. L. Stevenson'' as the exigencies of the several instances requiring his presence in person demanded.

A large part of the record is taken up with the testimony of two handwriting experts; one a witness for the prosecution, the other for appellant. The prosecution's expert testified that appellant wrote the grantor's name— ''E. L. Stevenson'', upon the deed which is the basis of the charge upon which appellant was convicted, while appellant's expert testified that appellant did not write the name thereon. One interesting sidelight upon this testimony was the production, by appellant at his office during the time of the trial, of a person who wrote the name ''E. L.

Stevenson'' before appellant's expert. This name, so written, appellant's expert declared to have been written by the same person who wrote the same name to the deed in question. The expert for the prosecution testified that it was not written by the same person. It should be noted that, although an E. L. Stevenson was produced at the trial by the prosecution, who testified that he had not written the signature to the deed in question and did not know and had not authorized the use of his name, that the E. L. Stevenson, whom appellant contends signed the questioned deed, did not appear at the trial, although appellant saw him, he says, during the course of the trial. Appellant explains this nonappearance of Stevenson as due to the fact that he was named as a defendant in the information with appellant. The record shows that during the trial the charge as against Stevenson was dismissed by the People. In view of the fact that appellant contends in his brief filed in this appeal that "E. L. Stevenson" might have been appellant's lawfully used *nom de plume,* the prosecution seemed justified in refusing the demand of appellant's counsel that E. L. Stevenson be granted immunity. There was much evidence introduced at the trial which was of a general nature and related to the condition and conduct of the offices occupied by appellant; that checks and records were found in the office and safe in the names of Stevenson and appellant. That there were found in the offices a great number of papers affecting title to real property. That in the same was a blank instrument signed with Stevenson's name. That witnesses called upon appellant at the offices to secure the release of their property from clouds upon their titles caused by recorded instruments. The deed in question, and upon which the charge against appellant is based, was found in appellant's office, and was an instrument which, under our laws, could be recorded and in fact was recorded. A check in amount sufficient to cover the recording of the deed in question and another instrument recorded at the same time and signed by appellant, was also found in the same offices. That appellant had access to all the three offices in the suite and at times used them all; that E. L. Stevenson had no record title to the lands described in the questioned deed. The above statement of facts is somewhat lengthy,

but seems justified when considered in comparison with the so-called "Narrative" filed by appellant which contains 514 pages.

The evidence presented at the trial, as will be seen from the foregoing summary, is conflicting as to matters of fact, but from the record as a whole it cannot fairly be said that there is not substantial and convincing evidence to support the findings of the trial court. The evidence is not of such a character as would justify this court in reversing the judgment.

Appellant's first contention is that the evidence is insufficient to support the verdict rendered by the court, and is predicated upon the fact that the land described in the deed in question had been registered under the so-called "Torrens Title Law" (Stats. 1915, p. 1932 et seq.), and that the mere recording of the deed as shown by the evidence would not affect the title; and that, as there was no evidence that the deed was registered, the People's case must fail. As a corollary appellant argues that as the deed was not, or could not be registered under the Land Title Law, that no one could be defrauded, which defrauding appellant asserts is a necessary element of the crime charged against him.

The sufficiency of the information was not questioned by demurrer or at any stage of the trial by appellant, and in charging the offense in the information, the language of section 115 of the Penal Code is substantially employed. The theory of the prosecution was that the deed purporting to be signed "E. L. Stevenson" was in fact signed by appellant. The crime with which appellant was charged, as defined in the section of the Penal Code hereinbefore referred to, consists in the offering for recordation of an instrument, which is either false or forged, when such instrument is one which, when genuine, is capable of recordation under law. The legislative intention in the enactment of the section is clearly one to protect the integrity of our system of recordation of instruments and the vice interdicted is the placing of false or fictitious instruments of record which might have the effect to cloud the record. Under the section the actual effect of the false or fictitious instrument upon the record title is immaterial to the crime charged. The court found upon

evidence of a substantial nature that the name signed to the deed in question, E. L. Stevenson, was forged and placed there unlawfully by appellant, and that this deed described a specific parcel of real property and was acknowledged before appellant as notary, so that apparently it was capable of being recorded under our laws (Civ. Code, secs. 1161, 1169, 1170, 1181, 1185, 1193, 1213), and was in fact offered for record by appellant and duly recorded as a deed. The gist of the offense charged is the offering for record of a false or forged deed. There is evidence in the record to support this finding, whether Stevenson be fact or fiction. Although it is true that under other sections of our Penal Code defining forgery, there are included as necessary elements of the crime charged thereunder, allegations that the instrument was executed with the *intent to defraud* and was in fact *fictitious*. In the case of *People* v. *Chretien,* 137 Cal. 450 [70 Pac. 305, 307], the court in passing upon the sufficiency of an information filed under section 47 of the Penal Code said (pp. 453, 454): "We now hold that the forgery of any fictitious instrument mentioned in section 470, and not mentioned or included in section 476, falls within the former section. We further hold that the information, brought under section 470, is sufficient, without alleging that the deed was fictitious. It is only where the information is laid under section 476 that the fictitious character of the instrument must be alleged. As we held in *People* v. *Eppinger,* 105 Cal. 36 [38 Pac. 538], where the instrument is fictitious, and the crime is punishable under section 476, the defendant is entitled to know by the information that it is brought under that section, and not under section 470. And this must be so, for section 470 includes in terms the same instruments (as well as many others not therein contained) found in section 476. But it does not follow, nor do we think it true, where the information is laid under section 470, that the fictitious character of the instrument must be alleged if it be an instrument not included in section 476. It is forgery in either case, whether the instrument is fictitious or not, and it is therefore immaterial whether the signature is that of a person not in existence or of an existing person, provided the instrument is not mentioned in section 476 or some other section specifically

dealing with the offense.'' The analogy existing between the above-cited case and the instant case, as to the proper interpretation to be placed upon the Penal Code sections involving the term ''forgery'' is clear.

The section under which appellant is charged, section 115 of the Penal Code, does not require that the act must be done with the intent to defraud another, nor is there any provision therein requiring that anyone be defrauded thereby. In this it differs from many other sections of the same code relating to forgery.

In the case of *People* v. *O'Brien*, 96 Cal. 171 [31 Pac. 45], where the defendant was tried and convicted under section 114 of the Penal Code, making it unlawful for a person not an officer to mutilate or destroy any public record, it was held that when an act in general terms is made indictable, a criminal intent need not be shown, unless from the language or effect of the law a purpose to require the existence of such intent can be discovered.

In *People* v. *Dillon*, 199 Cal. 1, 7 [248 Pac. 230, 232], the case of *People* v. *O'Brien, supra*, is quoted, and it is said: ''It is sufficient that he intentionally committed the forbidden act. . . . Section 20 of the Penal Code is too clear to require juridical support. It provides: 'In every crime or public offense there must exist a union or joint operation of *act* and *intent*, or criminal negligence.' (Italics supplied.) The only construction that may be placed upon the above quoted section is that there must be an intent to do the forbidden thing or commit the interdicted act. It furnishes no basis for the claim that there must exist in the mind of the transgressor a specific purpose or intent to violate law. If it were so, innumerable statutes would be rendered ineffectual.''

The cases of *People* v. *Webber*, 44 Cal. App. 120 [186 Pac. 406], and *People* v. *Baender*, 68 Cal. App. 49 [228 Pac. 536], both presented facts somewhat similar to the instant case, and both involved conviction under the provisions of section 115 of the Penal Code. These cases are conclusive authority in support of the conviction in the case at bar.

From an examination of the record here, it appears that there is no merit in appellant's contention that he was not granted a *''Speedy Trial''*. Appellant was placed

on trial within the time provided by law, and all continuances had during the course of the trial were with appellant's consent, either express or implied. The record fails to show that at any stage of the proceeding appellant made any objection to continuances. Appellant was tried by the court, having in open court waived his right to a jury trial, and further, appellant had waived his right to be placed upon trial within the sixty days provided by law. Appellant now for the first time objects that during the course of the trial there were a number of continuances, and that by reason of these continuances he was deprived of his right to a *"Speedy Trial"*. The record here fails to disclose that in any case where the trial was so postponed, appellant objected to the postponement, or that appellant was prejudiced in his defense by the action of the court in so continuing the trial.

█ Appellant attacks the constitutionality of the section of the Penal Code under which he was convicted. It would appear that his contention that the section is unconstitutional is based upon article IV, section 24, of the Constitution, which provides as follows: "Every act shall embrace but one subject, which subject shall be expressed in its title." This section must be liberally construed, and all that is required to be contained in the title in order to meet the constitutional requirement is a reasonably intelligent reference to the subject to which the legislation of the act is addressed, and it is not necessary that it should embrace an abstract or catalog of its contents. (*In re Weymann,* 92 Cal. App. 646 [268 Pac. 971].) █ The section attacked by appellant, in our judgment, is constitutional, and does not violate appellant's rights saved him under our Constitution.

The judgment and order appealed from are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1932.