[Crim. No. 3851. Second Dist., Div. Two. Sept. 5, 1945.]

THE PEOPLE, Respondent, v. HARRY HOROWITZ,
Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, Fred N. Howser, District Attorney, and Jere Sullivan, Deputy District Attorney, for Respondent.

MOORE, P. J.—Appellant was accused by indictment of having committed five felonies, to wit: forgery of a will (Pen. Code, § 470), altering a public document (Govt. Code, § 6200), causing to be filed a forged will (Pen. Code, § 115), offering in evidence a forged will (Pen. Code, § 132), preparing a false and antedated will (Pen. Code, § 134). As a part of the same indictment it was alleged that appellant had been convicted of four distinct felonies in the State of Illinois and that he had served a term of imprisonment therefor in the state prison. The indictment contained all of the essentials to constitute a valid accusation. Appellant was convicted on all of the counts except the second and was sentenced to be confined in the state prison for the term prescribed by law upon each of the four counts, the sentences to run concurrently. He grounds his appeal upon the insufficiency of the evidence, errors in admitting and rejecting evidence, misconduct of the prosecuting attorney, errors in giving and refusing instructions and misconduct of the court in communicating with the jury without the presence of counsel.

## The Evidence is Sufficient

Appellant is the adopted son of Esther Horowitz, whose will he was accused of forging. He lived in her home until he was 15 years of age when, according to his testimony, he left the home on account of his abuse by Morris Horowitz, the husband of decedent. Appellant was convicted of robbery for which he was sentenced to Joliet Penitentiary in 1926. Except for one parole granted him in 1934 he was confined until 1939. During his imprisonment his foster mother visited

him and upon his release his life was marked by filial piety. He was her nurse and chauffeur, managed her properties, deposited her money, and acted as her bodyguard. When ill he took her to clinics and health resorts and whenever invalided he nursed her in the sanitarium. The last scenes of his devoted services were at Los Angeles in 1942. In July of that year he returned to Chicago. He there busied himself with caring for the properties of his mother and performed such other services as he was able to do in her absence. A portion of his time was consumed by his efforts to write a will for his benefactress.

In the late fall of 1942 Mrs. Horowitz resided in the sanitariums of Mrs. Nailor and Mrs. Drucker and for a while at the Merritt Jones Hotel in Ocean Park from which on December 30, 1942, she returned to the home of Mrs. Drucker where she expired on the following day.

One week later appellant called with his wife at the sanitarium of Mrs. Drucker and demanded possession of the belongings of his mother, and for the purpose of his identification exhibited to her a blank piece of paper bearing the signature of Esther Horowitz. Not having succeeded on his first mission he called upon Mrs. Drucker a second time, exhibited the same paper but containing then the forged will without attesting witnesses. He employed Attorney Buchalter to probate the will but following a contest entered on behalf of Morris Horowitz probate was denied. In support of his motion for a new trial of the will contest appellant procured one Foley, a disabled veteran and former inmate of the state hospital for the insane, to make an affidavit. It contained averments corroborative of the testimony of appellant on the trial of the will contest. He obtained it by promising to buy a parking lot for the affiant. In anticipation of such affidavit appellant had Foley write out the statements dictated by appellant. He thereupon accompanied appellant to the office of Mr. Buchalter where the affidavit was prepared by the attorney and a notary. Needless to say, on the trial of the present action Foley denied the truth of all of the substantial contents of the affidavit.

After the will had been filed for probate on January 11, 1943, appellant called at the office of the county clerk, obtained possession of the will and sat at a table studying the document and comparing it with others. Messrs. John L.

Harris and Clark Sellers, experts on questioned documents, gave testimony that four changes had been made in the attestation clause; that the forty lines comprising the will were written after the paper had been folded, albeit the letter $H$ in the name of the testatrix was written before the paper had been creased; that "Esther Horowitz" was the first writing on the paper containing the will; that it was subsequently folded and the body of the will was written in above the name of the testatrix. Beneath the words of the will are the names of Maria Matus and Emma Cordova as attesting witnesses. Both experts opined that the will was written at three different times and in the following order: the signature, the body of the will, the names of the witnesses. Both gave candid and complete technical explanations for their conclusions. Appellant's wife, Celia Chico, testified that she had requested Maria Matus to have some friend join her as a witness to the publication of the will which, they testified, was signed while the decedent resided at the Merritt Jones Hotel. However, neither the maid that cared for the room of decedent nor the elevator operators nor the manager of the hotel nor its clerk had ever seen either Maria or Emma in the hotel. While the purported will bequeathed all of the belongings of decedent to appellant, it was proved in the probate proceedings of the estate of Esther Horowitz that Morris Horowitz was her surviving husband and that she had left a surviving brother and sister.

Evidence of the foregoing recitals was presented by witnesses deemed by the jury to be competent and reliable. Although it was contradicted by appellant and by the witnesses who testified in his behalf, it was sufficient if believed by the jury to establish the allegations of the indictment that a will was forged by appellant; that he composed and antedated the document; that he caused it to be filed for probate; and that he offered it in evidence in a judicial proceeding.

To constitute a forged will the crime is complete when the document has been so prepared that upon its face it will have the effect of defrauding one who acts upon it as genuine. (*People* v. *McKenna,* 11 Cal.2d 327, 332 [79 P.2d 1065].)

That appellant may not have executed the signature of the testatrix to the will renders it no less a forgery so long as he prepared the contents of the purported will above the signature after it had been written by the testatrix on the

blank paper. (*Union Tool Co.* v. *Farmers & M. National Bank,* 192 Cal. 40, 52 [218 P. 424, 28 A.L.R. 1417].) ▮ The intent on the part of the accused to defraud another constitutes the essence of the crime forgery, and the fact of forgery may imply an intention to defraud. (*People* v. *Baender,* 68 Cal.App. 49, 59 [228 P. 536].) ▮ While intent to defraud is of the essence of forgery the question of intent was one for the determination of the jury. (*People* v. *Pruitt,* 55 Cal. App.2d 272, 275 [130 P.2d 767] ; *People* v. *Borrego,* 211 Cal. 759, 765 [297 P. 17].)

▮ It is the function of the jury and of the trial court to determine what facts are established and no verdict will be upset on appeal for the insufficiency of the evidence unless "it . . . be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Perkins,* 8 Cal. 2d 502, 510 [66 P.2d 631] ; *People* v. *Tom Woo,* 181 Cal. 315, 326 [184 P. 389].)

▮ Appellant argues earnestly that because of the facts that his mother had oftentimes declared that it was her intention to bequeath to him all of her property and had evidenced such intention by having him named as the alternate beneficiary in liberty bonds in the amount of $13,000; that she had relied upon him exclusively in her declining years to nurse and care for her; that she had selected him to manage her properties and to write her will—it was therefore impossible for him to defraud anyone by presenting the forged will for probate. But the answer to all such arguments is that in the will contest Morris Horowitz filed his "contest of the will" and also an "amended contest" and that in such pleadings he declared himself to be the surviving spouse of Esther Horowitz. These instruments were both received as exhibits at the trial and were read by the prosecuting attorney to the jury without objection by appellant. In addition to such evidence it was proved that in the petition of appellant for the probate of the will he set forth as an heir-at-law of the deceased the name of Morris Horowitz, husband, 63, beside that of Harry Horowitz, adopted son, 33. Moreover, a letter of decedent addressed to Morris as her husband was in evidence and appellant proved that Morris and Esther at one time lived together as man and wife, giving rise to the pre-

sumption of wedlock. Such proof was sufficient to overcome any doubt created by appellant's testimony which was nothing more than a legal conclusion.

██ The question raised by appellant that there could be no fraud committed against such a nonentity as an estate cannot be taken seriously. The felony of forging a will is not to be determined by whether the decedent left an estate. The crime is complete the moment the instrument is uttered with intention of defrauding another. (*People* v. *Davidian*, 20 Cal.App.2d 720, 724 [67 P.2d 1085].) ██ The requirements of the law are satisfied when it is established that if the evident intent of the accused had been carried out an innocent person would have suffered detriment. (*People* v. *Kuhn*, 33 Cal.App. 319 [165 P. 26]. If the forged instrument had been admitted to probate, Morris Horowitz would have lost at least one-half of Esther's estate and he is a living person.

██ Appellant was convicted also of procuring a forged instrument to be filed in the office of the county clerk. In support of this count the proof is complete that appellant employed attorney Buchalter to file the forged will for probate. As to that crime the law does not require proof that anyone has been defrauded by the filing of the forgery. (*People* v. *Standley*, 126 Cal.App. 739, 747 [15 P.2d 180].) It also was complete after the document had been filed at the behest of appellant. (*People* v. *Baender, supra*.)

██ Similarly does appellant stand legally convicted of offering in evidence the forged instrument. He offered it for probate. He defended a contest filed by Morris. He knowingly offered the forged instrument in evidence, the crime denounced by section 132.

██ Likewise, in spite of appellant's own testimony and that of his witnesses, the contrary evidence was sufficient to warrant the jury in finding that appellant prepared a false, antedated will with the intent to produce it for a fraudulent purpose. His attempt to support his daring crimes as a lawful enterprise finds no support in reason or authority. He argues that he had a power of attorney from Esther authorizing him to exercise "the broadest authority over her property, including the power of disposition" and that such power should continue after her death. The instrument is an authority to "represent" her. It cannot be reasonably construed as a deed of gift. Each of the crimes of which appellant was

convicted is a distinct crime from the others. Each was committed on a separate date; each is defined by a different statute and each required proof peculiar to that particular crime. In no respect was there a want of evidence for the purpose of establishing any of the judgments based upon the crimes alleged.

### No Errors in Rulings on Evidence.

█ The second assignment is that the court erred in admitting certain evidence offered by the prosecution and in excluding certain evidence offered by the defense. His chief attack is made upon the handwriting experts who were allowed to testify to conclusions which he says should have been drawn by the jury. He contends that their qualifications lacked a knowledge of the chemistry of ink. The qualification of an expert to testify upon a subject requiring scientific knowledge is committed to the sound discretion of the trial court. It is not restricted by any specified limitations in determining such qualifications and the exercise of its discretion will not be disturbed except when it is shown to have been abused. (*People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771]; *People* v. *Rose,* 119 Cal.App. 487, 489 [6 P.2d 963].)
█ If the witness exhibits an unusual skill and knowledge gained from study and experience not possessed by the man on the street he is competent to give an opinion. (*State* v. *Smails,* 63 Wash. 172 [115 P. 82, 85].) █ The equipment, training and experience of the expert on forged documents makes of him a special functionary for the illumination of facts which are not readily discernible by the nonexpert. While the character of a handwriting may be distinguished by a peculiarity in the formation and union of letters, it is not readily noticeable by the nonexpert; yet when analyzed by one who has devoted years to the study of questioned documents such character may be quickly determined, and from his conclusions it may be established that a writing imputed to another may be shown to have been forged and the alterations or changes in a document may be made clear to the untrained eye. (*Sharon* v. *Hill,* 26 F. 337, 357; *State* v. *Smails, supra.*) The testimony of witnesses Harris and Sellers in explaining the effects of the folds in the paper, of the spreading of ink in the creases as contrasted with its nonspread on areas not folded, of the erasures of the dates of the execution and

witnessing of the will and of the discovery by use of the microscope of the original date on the paper constituted evidence that could not have been produced by any but experts. ■ Under proper instructions (Pen. Code, § 1127b) the jury was not obliged to accept the opinions of the experts as the only evidence of the forgery or more than evidence. In addition to their testimony the forged document itself and magnified photostats thereof were before the jurors who were enabled to form some opinion of their own as to its genuineness. (*Rolland* v. *Porterfield,* 183 Cal. 466, 469 [191 P. 913].)

■ Complaint is made of the receipt in evidence of the notice of intention to move for a new trial which had been prepared and filed by appellant in the will contest. He contends that it was irrelevant and that Foley should not have been permitted to refresh his memory from its contents. On the contrary, the affidavit of the witness Foley together with the notice of intention to move for a new trial were a part of the proceedings in the will contest and they were both proof of the offer of the forged will in that proceeding. If in a prosecution for perjury the judgment roll of the case in which the false swearing had been committed is competent evidence (*People* v. *Bradbury,* 155 Cal. 808, 815 [103 P. 215]; *People* v. *Reitz,* 86 Cal.App. 791, 796 [261 P. 526]), then the record of a will contest in which a forged will was introduced should be likewise received as proof of the proponent's alleged crime. But the fact that it may tend to prove an altogether different crime or aids in disclosing the proponent's motive makes it none the less admissible. (*People* v. *Pollock,* 31 Cal.App.2d 747, 758 [89 P.2d 128].) ■ As to the court's ruling in allowing the prosecutor to refresh the memory of Foley by reading from the affidavit he had signed, the facts are: After Foley had penned a memorandum of imaginary events as dictated by appellant he accompanied the latter to the office of Buchalter. The attorney then dictated an affidavit based upon the memorandum for Foley's signature to be used in support of his motion for a new trial of the will contest. When Foley could not see to read the affidavit it was not error for the court to have counsel read it aloud to him. (*People* v. *Allen,* 47 Cal.App.2d 735, 743 [118 P.2d 927].) The fact that the exhibit tended to show appellant guilty of subornation was not a valid objection to its introduction. (*People* v. *Hansen,* 62 Cal.App. 105, 107 [216 P. 399]; *People* v. *Burke,* 18

Cal.App. 72, 98 [122 P. 435].) Moreover, taken with Foley's testimony it was competent evidence of appellant's intent to defraud Morris Horowitz of his share of his decedent's estate.

 Attorney Buchalter while under direct examination by the prosecution testified concerning his employment by and conversation with appellant. On cross-examination he was asked: "Did he also state that Mrs. Horowitz had not only had nothing to do with Horowitz, but had terminated all her relationship with Horowitz and had made some kind of a settlement with him?" Objection to this question as self-serving was sustained. This was not error for the reason that it was discretionary with the court to determine what portions of a conversation proved on direct may be excluded on cross-examination, and it is incumbent upon the cross-examiner to show a definite, legal purpose in asking the excluded question. (*People* v. *Kiser*, 24 Cal.App. 540, 546 [141 P. 1078]; *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, 250 [116 P. 513]; *Moore* v. *Re*, 131 Cal.App. 557, 560 [22 P.2d 45].) This will suffice to answer appellant's criticism of the other rulings upon kindred cross-questions by appellant's counsel.

 In allowing the prosecution to refresh the memory of Attorney Buchalter by the use of his testimony before the grand jury no prejudice was suffered. The attorney had testified that the will when delivered to him on January 6, 1943, was folded as it appeared at the trial of the present action. After he had read his testimony before the grand jury on December 22, 1943, he was asked: "Do you now say that it is as folded and as creased as it was when it first came into your possession?" Over objection that it had been answered the court allowed the witness to repeat his answer that the document was not as fully creased and as clearly shown as when it was first handed to him. This was not error. A witness may have his memory refreshed by having his former declaration or testimony repeated to him. (*People* v. *Curtis*, 36 Cal.App.2d 306, 322 [98 P.2d 228].)

 It was not error for the court to exclude the question propounded to the clerk of the Merrit Jones Hotel. Appellant had previously elicited the answer of the clerk that it was his business as clerk to know who entered the hostelry; that he paid attention to know that a large number were in and out. Thereupon it was argumentative to inquire whether people would come in and go to some room without the clerk's noticing them.

■ Neither was it error to exclude the question propounded to the witness, Attorney Duchowney. Mrs. Drucker had employed him to present her claim against the estate. After the witness had testified that his client had objected to his testifying as to any conversation with her and had declined to waive the privilege as to any such conversation, and that he had not presented the check bearing the purported signature of decedent in support of her claim because of his conclusion that it would be a simple procedure to predicate her claim upon her bills, the court properly excluded the inquiry whether Mrs. Drucker had said ''to you that that was the true signature of Mrs. Horowitz,'' on the ground that it called for a privileged communication. (Code Civ. Proc., § 1881, subd. 2.)

■ Appellant complains that he was prejudiced by the court's receiving in evidence exhibit 12, an envelope which the witness Foley identified as of about the size of one he had mailed for the decedent while living at the hotel. He now contends that the envelope should have been excluded as incompetent. The only objection was that ''there is no proper foundation that that was the kind and type and exact size of the envelope.'' Such an objection was not pertinent to an offer to prove a fact by resorting to a visual demonstration to illustrate the witness' impression of the size of the object under inquiry. Foundations for opinions are required to be laid only in those cases where a witness is called upon to give his opinion. An opinion is not called for by asking the size of an object which had been observed by the witness. Such a question merely calls for testimony concerning a simple fact.

■ While he makes no specific assignment appellant contends that he was unduly restricted in his cross-examination of Attorney Abrahams. There was no error in excluding the inquiries as to what the attorney had said to appellant's counsel. The latter's name had not been mentioned on Abrahams' brief direct examination. The court is vested with a wide discretion in keeping the cross-examination within reasonable bounds. (*East Bay Mun. Utility Dist.* v. *Kieffer*, 99 Cal.App. 240, 261 [278 P. 476, 279 P. 178].)

■ Appellant complains that he was prejudiced by his cross-examination administered by the prosecuting attorney. He sets forth 28 questions asked and two statements made ·by counsel. There is no authority for assigning errors in

wholesale lots. Such method was condemned in *People* v. *Keyes*, 103 Cal.App. 624, 641 [284 P. 1096]. In the Keyes case to every question included in the assignment objection had been made. But in the case at bar, with a single exception, no objection was registered to any matter of which appellant complains. By reason of this neglect to register his disapproval of the numerous questions which he now assigns as error and thus afford the trial judge opportunity to correct the conduct of the prosecutor, we need not now indulge in further discussion of the extended remarks of appellant. (*People* v. *Wong Toy*, 189 Cal. 587, 594 [209 P. 543]; *People* v. *Garcia*, 83 Cal.App. 463, 469 [256 P. 876].) ██ The record reveals that each question by the state's counsel was a logical sequitur to what had preceded it. Appellant's counsel had undertaken by the direct examination to show that Morris Horowitz was the cause of appellant's criminal career. Much of the cross-examination was directed to an attempt to prove that such was not the fact. The inquiry whether Morris had caused him to commit the crimes other than the four robberies which he had charged to the latter was pertinent to appellant's accusing statements. The inquiry as to his having committed other crimes was a preliminary to the question as to whether he was convicted of grand larceny of an automobile on April 10, 1925.

The cross-examination was not at all similar to that exercised in *People* v. *Braun*, 14 Cal.2d 1 [92 P.2d 402], cited by appellant. No attempt was made to discredit appellant by showing that he held out in resorts where ex-convicts assembled. Neither does the case of *People* v. *Derbert*, 138 Cal. 467, 470 [71 P. 564], apply. The questions propounded to the witness in that case by the district attorney were objected to and exceptions were taken to his remarks throughout the examination and such objections and exceptions were the grounds urged for reversal. In that case the questions were asked by the district attorney "in face of the rulings of the court and certainly with the knowledge that the court would not permit them to be answered." That district attorney by forbidden questions got before the jury that Derbert had committed crimes of terror and should be convicted on general principles. No such conduct is shown to have been a part of the cross-examination of this appellant. ██ In the absence of a showing that the prosecutor asked questions solely for

the wanton purpose of creating a prejudice against the prisoner or that his acts militated against a fair and orderly procedure, it cannot be said that his conduct was prejudicial or offensive. (*People* v. *Wilson*, 76 Cal.App. 688, 702 [245 P. 781].) ▆ Upon cross-examination appellant cannot close the door to inquiry concerning the transactions which had been suggested by his own direct examination. (*People* v. *Selk*, 46 Cal.App.2d 140, 151 [115 P.2d 607] ; *People* v. *Masolini*, 107 Cal.App. 192, 195 [290 P. 77].) Hence there was no error. (*People* v. *Martinez*, 59 Cal.App. 121, 123 [210 P. 61].)

Appellant complains at length of adverse rulings made at the time of his attempts to prove that his leaving the home of his mother was due to the acts of Morris Horowitz. Upon a full statement of his counsel of what he intended to prove the objections were withdrawn and appellant testified to his heart's content.

▆ In offering exhibit 22 the prosecutor stated: ''It is a declaration on the part of Esther Horowitz exactly and entirely contrary to the express testimony of some 25 or 30 witnesses here in this court room as to her intentions and her feelings towards Morris Horowitz, her husband.'' The exhibit was a note written by decedent to her husband while she was in Chicago in August, 1942. Appellant was at the time present with her. It advised Morris that ''if you want to come home I have some money yet . . . Your Wife.'' Such evidence was a fair offer to rebut the imputation theretofore created by the testimony of appellant that Morris was not the widower of decedent. No objection was made to either the exhibit or the prosecutor's statement. Moreover, in view of the instruction to the jury to disregard any remark of counsel on either side it must be presumed that the jury obeyed such instruction. Therefore no harm could have been suffered by appellant. (*People* v. *Amer*, 8 Cal.App. 137, 142 [96 P. 401] ; *People* v. *Bradbury*, 151 Cal. 675, 679 [91 P. 497].)

### No Misconduct in Producing Foley as a Witness

▆ Appellant asserts that the production of Foley as a witness was marked by the gravest misconduct on the part of the prosecutor and persistent error on the part of the court. In November or December, 1942, Foley had mailed a letter for decedent. He testified that he did not so carefully inspect it as to ascertain its dimensions. Thereupon the People's advocate selected two envelopes of different sizes and asked the

witness whether the letter which he had mailed was like either. The witness selected the larger of the two as being approximately the size of the letter he had mailed. The only objection made to the introduction of the envelope was that ''there is no proper foundation that that was the kind and type and exact size of the envelope.'' Under the circumstances it was within the discretion of the court to determine whether sufficient foundation was laid for the admission of the exhibit which was merely a material embodiment of Foley's recollection of the size of the packet he had mailed.

Objection was made as leading and suggestive to a question asked of Foley whether anything was said on the occasion of appellant's second visit to Foley's room ''about a will bearing such a date of December 8, 1942.'' The matter of leading questions is largely within the discretion of the trial court. No prejudicial error resulted here.

A series of questions was propounded to Foley of which appellant now makes unwarranted complaint. With one exception he made no objection at the time. That objection was to the inquiry whether Foley, in the document that he had written at the dictation of appellant, in substance said that he resided at 116 Marine Street, Ocean Park, California. The objection was based upon the ground that it was ''leading and suggestive''; that ''he has laid no foundation for using this document for the purpose of attempting to get the purport of some other document.'' Such objection had nothing to commend it, since at the moment of its utterance appellant's counsel had possession of the very document Foley had written, and it had been used by appellant in the will contest.

Criticism is made of the trial judge's remark as follows: ''Well it is obvious that it was from the former testimony given by the witness.'' The prosecutor had asked Foley when appellant promised to buy him a parking lot to which the answer was that it was at their first meeting. When this was followed by the inquiry whether it was before the writing of the memorandum the objection followed that it was leading and suggestive. After an affirmative answer the court interrupted with the quoted remark. No prejudice was caused. The observation made by the judge was a fair comment and a reasonable interposition to expedite the trial. But having waived his right by neglecting to move to strike the

court's remark he cannot now complain. (*People* v. *Brazil*, 53 Cal.App. 2d 596 [128 P.2d 204].)

The contention that prejudice was suffered by the court's permitting Foley to testify because the prosecutor "knew the man's mental incompetency before he produced him" cannot be taken seriously. No objection was made to the witness on the ground of his incompetency and for that reason the assignment if of value could not be the basis of a reversal. (*People* v. *Singh*, 182 Cal. 457, 484 [188 P. 987].)

There is no prescribed standard of mental competency to qualify one as a witness. It is well known that out of the mouths of babes oftentimes the truth is spoken. Since there is no standard, each instance is confided to the discretion of the trial judge. (*In re Mazuran*, 88 Cal.App. 272, 277 [263 P. 339].) However, no criticism of the court in permitting Foley to testify appears to be justified by his testimony in print. The fact that he had once been committed for insanity is not conclusive at a later date. The determination of the qualification of a witness is "almost wholly in the discretion of the trial judge." (*People* v. *Harrison*, 18 Cal.App. 288, 295 [123 P. 200].) Criticisms of Foley's qualifications for testifying come with poor grace from appellant. When he was in the depths of despair at the denial of the probate of the forged will he was both zealous and bold in employing Foley to come to his rescue. Not until the shadows of his freedom had merged into eventide did he scorn as mentally deficient him whose averments appellant had once erected as a refuge. He was unhesitant in calling him to the stand to aid in effecting the defeat of the judgment in the will contest. Since the state's counsel was by appellant denied the use of the memorandum to refresh Foley's memory, no unfairness appears to have been committed by allowing his memory to be refreshed by reading to him the contents of the affidavit he had signed and which Attorney Buchalter proved to have been based upon the contents of the same memorandum. Should the prosecution be foreclosed by so strict an interpretation of section 2047, Code of Civil Procedure, as contended for by appellant, justice would be at the mercy of every person accused who should be so fortunate as to sequester a fatal memorandum prepared at some time by a pivotal witness. The cases cited by appellant to establish error in the court's permitting the examination of Foley are not pertinent. (*McEwen* v. *New York Life Ins. Co.*, 187 Cal. 144 [201 P. 577];

*Kearney* v. *Bell,* 160 Cal. 661, at 670 [117 P. 925] ; *Richmond* v. *Denny,* 47 Cal.App. 745 [191 P. 554] ; *People* v. *Tufts,* 167 Cal. 266 [139 P. 78] ; *People* v. *Mohr,* 157 Cal. 732 [109 P. 476] ; *People* v. *Derwae,* 155 Cal. 592, 597 [102 P. 266] ; *People* v. *Davenport,* 13 Cal.App. 632 [110 P. 318] ; *People* v. *Valliere,* 127 Cal. 65 [59 P. 295] ; *People* v. *Wells,* 100 Cal. 459 [34 P. 1078] ; *People* v. *Hail,* 25 Cal.App. 342, 358 [143 P. 803] ; *Viereck* v. *United States,* 318 U.S. 236 [63 S.Ct. 561, 87 L.Ed. 734, 741] ; *Berger* v. *United States,* 295 U.S. 78, 88 [55 S.Ct. 629, 79 L.Ed. 1314] ; *People* v. *Lee Chuck,* 78 Cal. 317, 328 [20 P. 719] ; *People* v. *Yokum,* 118 Cal. 437, 442 [50 P. 686] ; *People* v. *Derbert,* 138 Cal. 467, 470 [71 P. 564].) They treat of a variety of means by which the prosecuting attorney may illegally prejudice the prisoner on trial. It is true that many a person tried for crime has suffered prejudice at the hands of the prosecutor, but to regale us with a recital of such cases is a far cry from showing by objections, exceptions, assignments of error or motions to strike that the People's counsel in the instant case abused his office to the detriment of appellant.

### A Fair Trial was not Prevented by Misconduct of the Prosecutor

Appellant contends that he was denied a fair trial by (1) the hostile atmosphere created in the course of the trial by the prosecution and (2) the argument of state's counsel. He asserts that there was ''a determined persistent effort to influence the jury by appeals to their passions, and to play upon their prejudices by sneering at and belittling appellant's counsel and by a wanton disregard of fundamental principles of right and justice.'' We find nothing in the record answering the description of the conduct referred to and will confine our discussion to the occurrences and character specified.

Appellant says Mrs. Drucker's testimony was so inherently incredible that the jury could not have believed it had they not been unduly influenced by passion and prejudice. The lady testified that when appellant first called on her he displayed the blank sheet of paper bearing decedent's autograph and at a subsequent time displayed the same paper with the will above the signature. Appellant says it is ''unthinkable that he would forge an instrument above that signature and then present the same paper to the person to whom the

signature had originally been exhibited." The stupid follies committed by persons about to embark upon crime are not unthinkable—to the actors. Possession of the knowledge that criminals undertake such ill-conceived ventures is the factor that enables the crime detector at the threshold of an investigation to suspect and even to reenact the successive steps of the offense of which the accused is suspected. Of course Mrs. Drucker might have been mistaken; indeed she might have falsified. But the jury were empaneled to determine that question. Neither possibility is sufficient cause for concluding that her testimony was inherently improbable. For· it to be so it is not sufficient that it disclose unusual circumstances. "Where the testimony is such that within the knowledge of reasonable men it cannot be true, the appellate court might assume that knowledge and hold the testimony legally insufficient, but to do so the court must act on what is equivalent to judicial notice." (*People* v. *Jackson,* 63 Cal.App.2d 586, 588 [147 P.2d 94].) Such equivalent does not here appear. ▮ The presence at the trial, "with the tacit approval of the court," of the widower of decedent, a sickly, legless, forlorn, old man sitting in a wheel chair either in the presence of the jury during the proceedings or in the corridor traversed by them, is not a denial of appellant's right of due process of law. There is no doubt that the ghostly form of the helpless man had hovered over the dreams of appellant many a night as the latter schemed to gain possession of the wealth to which the husband was entitled. ▮ For this reason it is startling to learn that his counsel made no protest at the presence of the intended victim of appellant's aborted chicanery. But since objection was not recorded to his haunting the purlieus of the temple, no advantage thereof may be taken on appeal. (8 Cal.Jur. § 520, p. 506.) Furthermore, in his motion for a new trial appellant failed to specify any irregularity of the district attorney or of the court by reason of the presence at the trial of Morris Horowitz. ▮ He was an interested spectator, in fact the complaining witness, and was entitled to be present. Therefore his presence cannot be said to have violated appellant's right of due process of law.

### No Misconduct in Prosecutor's Argument

▮ It is contended that appellant was prejudiced by a number of statements of the People's counsel and that the court "indicated" that it would disregard all objections or

assignments of the defense. If appellant's attorney was thus impressed at the trial he should nonetheless have made his objections; should have moved to strike the harmful matter and have requested the court to admonish counsel. He now specifies 28 remarks of the prosecutor in the course of his argument and assigns them as grounds for reversal. ■ In the 81 pages of such argument appear but two interruptions by appellant's counsel. At one time a statement of the law as to the extent of the power granted by a power of attorney was challenged; at another when the prosecutor said of decedent, "That woman was not right mentally," appellant's counsel assigned it as "erroneous; it is an unfair inference." Such a criticism is directed at the correctness of the logic of the prosecutor. If he had erred in drawing an inference from a fact proved it may not for that reason be said that he is guilty of misconduct. ■ Misconduct implies a dishonest act or attempt to persuade the jury by vicious measures. ■ But having laid no foundation at the trial for the other 26 statements listed in his brief as constituting prejudicial error by requesting an instruction to disregard them, appellant is in no position to take advantage of them even if they had been prejudicial. (*People* v. *Ramirez,* 21 Cal.App.2d 466 [69 P.2d 913].)

### No Error in Giving or Refusing Instructions

■ Appellant assigns as error the refusal by the court of a number of instructions requested by him. All of the instructions—the rejection of which is assigned as error—are set forth on the margin hereof.* As to No. 2 Foley was not proved to be insane. He was not challenged on taking the stand. In response to a question propounded by appellant's

---

*DEFENDANT'S REJECTED INSTRUCTIONS, REFUSAL OF WHICH CONSTITUTES THE GROUNDS OF HIS ASSIGNMENTS.

2. You are instructed that if you believe Leo Foley was an inmate of a state hospital for the insane and that he has been released but never declared sane, you must disregard all of his testimony as being that of an incompetent person.

4. You are instructed to strike from the evidence People's Exhibit 22 and not to consider it in your deliberations in this case. This document is a purported letter written by the deceased to Morris Horowitz.

6. You are instructed that the gist of the crime of forgery is the specific intent to defraud, and in reaching your verdict on whether or not the defendant had a specific intent to defraud the estate, you must consider whether he believed that he was to be the sole beneficiary of the estate, and if he so believed it was the intention of the testator that

counsel he testified that he had been cleared of his insanity. He was not shown to have been incompetent as a witness. Neither was his testimony challenged on the grounds of his incompetency. No objection was made to it, nor was motion made to strike it. Refusal of No. 2 was not prejudicial.

There was no error in rejecting No. 4. The exhibit referred to was the letter of decedent to her husband. Such an instruction would have been an attempt to improve upon section 115 of the Penal Code which was included in the court's charge and states clearly the law applicable to the filing of forged instruments.

There was no error in rejecting defendant's requested instructions No. 6 and No. 7. These instructions were attempts to improve upon the statement of the law as declared in sections 132 and 134 of the Penal Code which were read to the jury. They would have been a repetition of the court's instruction with respect to specific intent to defraud and a

---

he was to be the sole beneficiary of the estate, there could be no intent to defraud the estate, and in that event it would be your duty to acquit the defendant of the crime of forgery.

7. You are instructed that the essence of the crime of forgery is the intent to defraud, and if you find from the evidence in this case that the defendant Harry Horowitz had no such intent you must acquit him.

In determining whether he had any such intent it is your duty to take into consideration any and all other wills or documents that Mrs. Esther Horowitz had executed or prepared and which Harry Horowitz knew she had executed or prepared, leaving him the entire estate, and if you find that he believed it was her desire or intent to leave him the entire estate, regardless of whether he presented People's Exhibit 9 in evidence for filing or not, then you must find that he had no intent to defraud the estate, and in that event your verdict must be not guilty.

8. You are instructed that the testimony of an eye witness is direct and positive testimony. The direct and positive testimony of one witness is sufficient to prove a fact at issue.

10. You are instructed that it is immaterial, insofar as the law of forgery is concerned, whether the body of the will was written before or after the signature of Esther Horowitz was placed thereon. If you believe that Harry Horowitz had authority to prepare the will from Esther Horowitz it would be immaterial when the will was prepared or written in, so long as Harry Horowitz had such authority.

11. You are instructed that you have a right and a duty to take into consideration in reaching your verdict the relationship between Harry Horowitz and Esther Horowitz, her attitude toward him during her lifetime, her desire that he have her property, and all of the things which she said and did in respect thereto. You also have a right and a duty to consider her desires in excluding any other person or persons from her estate or any benefits thereunder and his knowledge of those facts.

12. You are instructed that an adopted child succeeds to the estate of one who has adopted him, the same as a natural child, and the person

specific intent to produce a false instrument. As further reason why No. 7 should have been given appellant states that the testimony showed that Morris Horowitz was not married to decedent and that this left appellant as her sole surviving beneficiary and therefore he could not attempt to defraud anyone. That has been discussed above with finality. The law of forgery was fully explained in the court's instructions 11 and 12.

■ It was not error to reject defendant's instruction No. 8. It was not a correct application of the law to the facts in issue. The jury were correctly instructed on the subject there mentioned in the general instructions. To have given the rejected instruction would have been to outlaw all of the circumstantial proof offered by the People.

■ There was no error in rejecting defendant's requested

---

adopting succeeds to the estate of an adopted child the same as a natural parent. An adopted child does not succeed to the estate of a natural parent.

If you find in this case that Harry Horowitz was the adopted child of Esther Horowitz, the decedent, he would be entitled to succeed to the estate of Esther Horowitz the same as a natural child and if the evidence fails to show any other legal heirs he would be entitled to the whole estate and in that event there could be no intent to defraud which is an essential element of the crime of forgery.

17. You are instructed that count one of the indictment charges an intent to defraud Morris Horowitz, the husband of Esther Horowitz. If you find in this case that there is no proof beyond a reasonable doubt or any proof that Morris Horowitz was the legal husband of the deceased at the time of her death there can be no intent to defraud Morris Horowitz and you must so find.

18. You are instructed that an adopted son, if the only child, would succeed to the entire estate of the deceased, even without a will, if Esther Horowitz was not legally married to Morris Horowitz, at the time of her death, and if you so find you must acquit the defendant of the charge of forgery in count one of the indictment.

19. You are instructed that a party is bound by new matters brought out on cross-examination of a witness, and if you find that the people have brought out new matters on cross-examination not brought out on direct examination you must find that they are bound by these matters.

20. You are instructed that an adopted child, if the only known child of the deceased, would succeed to the whole of the estate of Esther Horowitz, even without a will if Esther Horowitz was not at the time of her death legally married to Morris Horowitz or if she had made a property settlement with him so that he was no longer entitled to any part or portion of her estate and if you find that Harry Horowitz was the adopted child of Esther Horowitz and that Morris Horowitz was either not legally married to her or that he had made a property settlement with her you must find that the defendant could not intend to defraud the estate of Esther Horowitz or Morris Horowitz and your verdict must be not guilty as to the charge of forgery in the indictment.

instructions 10, 11, 12, 15, 17, 18, 19 and 20. The proposed instructions are argumentative and repetitious. (*People* v. *Jones,* 61 Cal.App.2d 608, 626 [143 P.2d 726].) The jury decided the issue of decedent's marriage to Morris Horowitz upon all of the evidence contrary to appellant's contention.

The court's instruction 17 is criticized in that it told the jury that the intent to produce the false document "did not constitute the essence of the charge" and also that there need be a specific intent to defraud only in the crimes charged in counts I and V but not as to those charged in III and IV. The instruction fairly applies the principles and language of sections 470 and 134. Both require the finding of a specific intent. (*People* v. *Standley,* 126 Cal.App. 739, 747 [15 P.2d 180].) In this they differ from sections 115 and 132, both of which, appellant asserts, make the same requirement. He bases this contention upon the word "knowingly" which occurs in both 115 and 132. That word does not impart the idea of intent but merely refers to a knowledge of the essential facts which bring the act within the provisions of the code. (*People* v. *Murphy,* 17 Cal.App.2d 575, 585 [62 P.2d 592]; *People* v. *McCalla,* 63 Cal.App. 783, 793 [220 P. 436].) The instruction contains no prejudicial matter.

The court's instruction No. 18 is in the exact language of section 21 of the Penal Code, by the enactment of which the Legislature in no respect transcended its constitutional limitations. It is a fair embodiment of the law. (*People* v. *Breuer,* 15 Cal.App.2d 745 [60 P.2d 162]; *People* v. *McCarthy,* 25 Cal.App.2d 667, 669 [78 P.2d 252].)

The court's instruction No. 5 directs the jury as follows:

"If the evidence in this case, as to any particular count, is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence and reject that which points to his guilt.

"You will notice that, in this instruction, this rule of law is made applicable to cases in which there are two opposing interpretations, each of which appears to you to be reasonable.

"This rule of law does not apply in a case where there are

two opposing constructions sought to be placed upon the evidence, one of which appears to you to be reasonable and the other to you appears to be unreasonable.

"In the latter case it would be your duty, under the law, to adopt the reasonable construction and reject the one which, in your judgment, appears to be unreasonable."

Appellant's only criticism of this instruction is directed against the last three paragraphs. But since they are a reasonable explanation of the first paragraph they are themselves correct. No portion of an instruction should be considered separately from the entire instruction any more than a single instruction should be considered separately and apart from the entire charge. (*People* v. *Tolmachoff,* 58 Cal.App.2d 815, 824 [138 P.2d 61]; *People* v. *Newland,* 15 Cal.2d 678, 684 [104 P.2d 778].)

The jury were given the orthodox instructions, including all fundamental doctrines necessary for the proper conduct of a criminal trial as well as the statutes involved in the five accusations made. They were instructed fully upon the general duties of a jury and they were told that they must find the defendant guilty beyond a reasonable doubt of each of the offenses charged. We find no prejudicial error in the instructions given or in the rejection of instructions proposed.

### No Prejudice Caused by the Judge's Communicating With Jury

Appellant contends that he suffered prejudice by the court's sending four exhibits to the jury room. After the jury had retired the foreman asked the bailiff to fetch exhibits 9, 13, 14 and 15. The judge did not communicate with the jury. Neither did he advise the bailiff as to what exhibits he should deliver to them. The only participation of the judge was his answering the inquiry of the bailiff by telling him that the requested exhibits were a part of the evidence. The deputy informed neither counsel of the foreman's request. This does not constitute a communication with the jury by the court as condemned in the cases cited by appellant. It was nothing more than the foreman's extending his hand into the courtroom and obtaining physical possession of documents which were already before the jury and to the possession of which they were entitled. (*State* v. *Beal,* 48 N.M. 84 [146 P.2d 175].) Technically, the procedure followed was not

strictly correct. The exhibits should have been obtained by the foreman's request to the judge by the bailiff, and a hearing of the request in open court along with any objections by either party. But no prejudice could possibly have been suffered by reason of this variance. If the jury were entitled to take with them all of the exhibits (*People* v. *Balestieri*, 23 Cal. App. 708, 711 [139 P. 821]) they could not have been prejudiced by sending the officer for any part they had neglected at first to take with them. ▆ It is the absolute right of neither litigant to have the exhibits sent with the jury unless the latter demand it. (*People* v. *Dunlop*, 27 Cal.App. 460, 470 [150 P. 389].) Nor is it mandatory under section 1137, Penal Code, upon the court to deliver the exhibits to the jury in the courtroom before they retire. (*People* v. *Willis*, 70 Cal.App. 465, 474 [233 P. 812].) The jury is a constitutional part of the court and they are privileged to take all or any of the exhibits with them. (*State* v. *Beal, supra.*)

In *People* v. *Alcalde*, 24 Cal.2d 177, 188 [148 P.2d 627], the foreman of the jury sent to the judge a sheet of paper with the inscription, ''May we render a decision of life imprisonment *and not eligible for parole?*'' on which the judge made the answer in writing, ''No.'' It was held that since the court could not have responded by any other answer than that they should follow the instructions already given, the episode was not prejudicial. ▆ Prejudice is not even presumed to have been suffered because exhibits marked for identification have been by mistake given to the jury. (*People* v. *Horiuchi*, 114 Cal.App. 415, 437 [300 P. 457].) ▆ Injury is not presumed from error. Prejudice must appear affirmatively to the court after an examination of the entire cause including the evidence. ▆ The burden of establishing prejudice is upon appellant under the Constitution of this state. (Art. VI, § 4½; 8 Cal.Jur. §§ 590-591, p. 599; *People* v. *Nolan*, 126 Cal.App. 623 [14 P.2d 880]; *People* v. *Alcalde, supra.*) The authorities cited by appellant (*State* v. *Beal*, 48 N.M. 84 [146 P.2d 175]; *Outlaw* v. *United States*, 81 F.2d 805; *Little* v. *United States*, 73 F.2d 861 [96 A.L.R. 889]; *Henderson* v. *State*, 18 Okla.Cr. 611 [197 P. 720]; *Chang* v. *United States*, 91 F.2d 805, 810) with one exception are not pertinent. In most of them the judge conferred alone with the jury or its foreman. The Beal case arose in New Mexico where the rule prevails that the state has the burden

of showing that no prejudice resulted from an irregularity. Such is not the law of this state as above shown. (8 Cal.Jur. §§ 590-591, p. 599.)

The judgment is affirmed.

McComb, J., concurred.

A petition for a rehearing was denied September 18, 1945, and appellant's petition for a hearing by the Supreme Court was denied October 4, 1945.